PROCESS REFINING CORP v WELLS et

Ohio Appeals, 2nd Dist, Franklin Co

No 2334. Decided Aug 9, 1933

N. L. Greenlee, Columbus, for plaintiff.
Gentsch & Lang, Cleveland, for defendants.

## OPINION

By BARNES, J.

It is the contention of plaintiff that the Wells' had no right to attempt to cancel the contract on the thirteen different specifications as set out in its notice under date of August 18, 1932.

It is further claimed that the second notice of cancellation of the contract should not avail on the claimed ground that the Wells' were responsible for the receivership through their previous unlawful acts through which the credit of the corporation was injured.

The contract, in very clear terms, provides that it may be terminated in the event a receiver is appointed for the property. A receiver has been appointed for the property and thereby ground for the termination of the contract exists, unless the conduct of the parties seeking termination is a major reason for the receivership.

In considering this question, we must approach it with the conclusion that it was very evidently the intent of the parties to the original contract that the contract itself was not to pass into the hands of the receiver as an asset for the benefit of creditors. If it were possible to show that the financial difficulties of the company were only temporary and that its assets were adequate to pay its obligations, if judiciously handled, a somewhat different problem would be presented to us. No claim is made of a desire or purpose to lift the receivership through payment of its debts. We think it is fairly inferable, from all the evidence, that the company has practically no assets.

The original financial structure of the plaintiff company is rather peculiar. In the testimony reference is made to issuance

and transfer of stock to a number of individuals, but they say there was no money paid for such stock. The only stock producing any money was an outsider who put in $1300.00, and that was the company's working capital so long as it lasted. It does not seem strange that Wells' would be dissatisfied with that kind of a financial set-up, and financing was one of the obligations of the contract, as provided in clause six thereof:

"The second party to receive 66 2/3% of the net profits from such business for **financing, manufacturing** and **marketing** the devices or units."
(The black face is ours).

Reliance on advance payments on sales, as seemed to be the practice, would not appear to be what the parties had in mind at the time of executing their contract.

The treasurer of the company, in his testimony, admits that Mr. Wells told him that he was leaving for the reason, among others, that the company was not paying a reasonable compensation for his services. The contract provided that payment for such services was to be made. The amount was not designated but was left for future determination. No claim is made by the company that Mr. Wells was adequately paid, but rather the excuse is made that he was paid as much as any of the rest of the organization and all were drawing very little due to the fact that the company did not have funds. It was no obligation of Mr. Wells to provide the funds. This was the obligation of the other parties to the contract.

It further appears that when a unit was manufactured and ready for delivery, it could not be taken out until an advance payment was procured on another sale. This method of operation could not mean anything else but failure.

Mr. Wells was warranted in severing his connection unless they kept themselves in position to compensate him for the reasonable value of his services.

Complaint is made that Mr. Wells injured the credit of the company through his withdrawal therefrom and by reason of conversations had at various times with Mr. Robert G. Reed, secretary and credit manager of the Buckeye Blower Company, the concern with which the corporation had a contract for manufacturing its units. It must be remembered that the Process Refining Corporation had office space with the Buckeye Blower Company, and the organization of each company would be in contact almost daily. On one occasion at least Mr. Wells had lent his individual credit by signing a note together with other members of the organization to the Buckeye Blower Company. Of course, the Buckeye Blower Company is a creditor and it is to their advantage if the contract can be held as an asset and sold by the receiver. Through a very close examination and analysis of the testimony of Mr. Reed relative to the conversations and communications with and from the Wells', either or all of them, we fail to find anything for which or to which censure should attach. Mr. Reed does testify that after receiving certain information they were not so anxious to extend unlimited credit and were a little more careful on the line. We fail to find that Mr. Wells gave any false information, nor does the narrative indicate that it was done with any purpose or intent to injure credit.

It is very apparent that they were not entitled to any credit at all, and if they were receiving credit through any misapprehension of Mr. Wells' connection therewith, it would be highly proper for Mr. Wells to acquaint the Blower Company with the true conditions. Without going into the testimony of other witnesses, which it is claimed tends to show improper conduct on the part of the Wells', one and all, which brought about the appointment of the receiver, we would say that we have read the testimony very carefully but fail to find sufficient evidence to support this claim.

It being our conclusion that this is an adequate ground for terminating the contract and the same being clearly proven, we do not deem it necessary to go into the other grounds set out in notice of August 18, 1932, comprising thirteen points of claimed violation of contract.

Counsel for receiver urge that the kind of receivership here involved is not of the character contemplated by the parties. We are not able to follow this argument or its reasoning.

Under all the facts in the case it is our conclusion that the plaintiff is not entitled to an injunction, and therefore the restraining order heretofore granted will be dissolved at plaintiff's costs.

Another and further question arises on the cross-petition of Rockett and Shadek.

In their cross-petition they seek injunction against the plaintiff and base such claim primarily under an assignment of contract executed by the Wells' on May 19, 1930, with Carl V., Fred J., and Ernest Spickelmier, of Indianapolis, Indiana. This contrast contained provisions for terminat-

ing and the Wells', prior to their contract with Jones and Dial, had served on the Spickelmiers a notice of cancellation, but in so doing they had not followed the manner and method prescribed in the contract for termination.

In the later contract with Jones and Dial there was provision made that such contract was to be subject to all the rights of Spickelmier, if any. The Spickelmiers had not accepted cancellation, but had replied that they relied upon the contract. However, the Spickelmiers had not operated since October, 1931. Their contract was dated May, 1930. The exclusive privileges under the Spickelmier contract were limited to Indianapolis and a radius of fifty miles surrounding. The contract contained a clause providing for conditional rights in additional territory and this clause reads as follows:

"Effective that date when royalty earnings are paid based on a through put of six thousand (6,000) gallons or more for a month, it is mutually agreed and understood between the parties hereto, that the parties of the second part shall have a **reasonable length of time to investigate any other location where the parties of the first part have a bona fide application for a license permit to engage in this same type of business from some other party or parties, such party or parties to be described to the parties if the second party, who agree to, within a reasonable length of time, install and operate a Universal Oil Refiner with the view that the parties of the second part shall have the priority right to said license for that territory, providing the parties of the second part shall make an immediate investigation and decision and within ninety days from that time establish a plant to serve that particular location, the terms of this agreement to regulate operations of the party of the second part in all locations wheresoever situated."**

(The black face is ours).

The evidence indicates that the provision of the contract providing for the six thousand (6,000) gallon through put was met.

Jones and Dial in accepting their contract subject to the Spickelmier contract were put on inquiry as to the terms and conditions thereof and whether or not it still existed. The rights of the Spickelmiers, or their assigns in Columbus territory or any other territory beyond the fifty mile radius of Indianapolis were nothing more than an option. Unless Spickelmiers or their as-

signs desired to exercise the option to operate in Columbus, no injunction would be issued in any event.

The fact that the court has determined against the plaintiff and receiver on the petition and supplemental petition possibly renders unnecessary any determination on the cross-petition of Rockett and Shadek. However, the entry may show injunction not allowed on the cross-petition.

Entry may be drawn in accordance with the above findings. Exceptions will be allowed to all parties.

KUNKLE, J, concurs.

HORNBECK, PJ, concurs in judgment.

## ON APPLICATION FOR REHEARING

Decided Aug 22, 1933

By THE COURT

The above entitled cause is now being determined on plaintiff's application for rehearing.

The application sets out the following grounds:

1. The finding and judgment of the court are contrary to the weight of the evidence;

2. The finding and judgment of the court are contrary to law.

The brief in support of the motion makes no citation of any authorities. It is confined entirely to an argument against the conclusion of this court in its original opinion.

Without further comment we might say that in our original opinion we considered all questions now raised and therefore the application for rehearing will be denied.

HORNBECK, PJ, KUNKLE and BARNES, JJ, concur.